## I. V. Edgerton, Defendant in Error, v. The Chicago, Rock Island & Pacific Railway Company, Plaintiff in Error.

### Gen. No. 14,242.

1. JUDGMENTS—*when discontinuance proper; when not.* Judgment that a suit be discontinued is proper where the plaintiff voluntarily withdraws his suit or where he is regarded as out of court by some technical omission, mispleading or the like; but such a judgment in an action *ex contractu* is informal if entered as to two defendants, one of whom has appeared and is in default and the other of whom has not been served. The judgment as an entirety, however, taken in this case as equivalent to a judgment in favor of two of the three defendants and as against the third of them.

2. JUDGMENTS—*against whom must be rendered in actions ex contractu.* In an action *ex contractu* judgment must be rendered against all defendants who have been served or against none.

3. WAREHOUSEMAN—*burden of proof in action against.* In an action against a warehouseman for not delivering goods, the burden of proving the delivery to the warehouseman and a failure to redeliver by him, is on the plaintiff, but those facts being proved, it devolves on the warehouseman to show that the goods were lost without his fault.

4. COMMON CARRIERS—*when action of tort lies to recover for lost merchandise.* Merchandise taken from cars of a carrier may be recovered in an action of tort.

(Mr. Justice CHYTRAUS dissenting.)

Action of contract. Error to the Municipal Court of Chicago; the Hon. HENRY C. BEITLER, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1908. Affirmed. Opinion filed January 8, 1909.

M. L. BELL, for plaintiff in error; BENJAMIN S. CABLE, of counsel.

ELA, GROVER & GRAVES, for defendant in error; WALTER H. ECKERT, of counsel.

MR. JUSTICE BAKER delivered the opinion of the court.

In an action of the fourth class in the Municipal Court, defendant in error Edgerton had judgment for $275 against plaintiff in error, the Rock Island Company, to reverse which this writ of error is prosecuted. The suit was brought against the Rock Island Company and the Hoosac Tunnel Line, and both defendants were served with summons. The amended statement of the plaintiff's claim against said defendants is as follows:

"States that the plaintiff's claim is for fifty-three (53) cases of eggs, delivered to the Chicago, Rock Island & Pacific Railway Company, as common carriers, on or about April 21, 1904, at Beatrice, Nebraska, to be by it transported to the City of Chicago, to be transported from the city of Chicago by the Hoosac Tunnel Line to destination at Albany, New York, and there delivered, which eggs were never delivered."

Afterwards, by leave of the court, the plaintiff joined the Wabash Railroad Company as a defendant with the other two defendants, and filed the following statement of his claim against said defendants:

"Plaintiff's claim is for fifty-three cases of eggs delivered to the Chicago, Rock Island & Pacific Railway Company as common carriers on or about April 21, 1904, at Beatrice, Nebraska, to be by it transported to the city of Chicago, to be transported from the city of Chicago by the Wabash Railroad Company as Hoosac Tunnel Line to destination at Albany, New York, and there delivered, which eggs were never delivered."

The Rock Island and the Wabash companies each

entered its appearance, but the Hoosac Tunnel Line entered no appearance. The cause was submitted to the court. The judgment order states that the court found the issues joined in favor of the plaintiff and against the Rock Island Company; assessed plaintiff's damages at $275, rendered judgment for that sum and costs against said company, and then proceeds as follows: "And it is further ordered by the court that this suit be and the same hereby is discontinued as to the defendants, Wabash Railroad Company and Hoosac Tunnel Line."

Judgment that a suit be discontinued is proper where a plaintiff voluntarily withdraws his suit, or where he is regarded as out of court by some technical omission, mispleading or the like. Here two defendants had appeared, and an appearance in an action of the fourth class takes the place of a plea. The third defendant, the Hoosac Tunnel Line, was in default for failure to appear after service of summons and the plaintiff was, under the Municipal Court Act, entitled to judgment against it, as in case of default. The judgment entered in this case, upon the record as it stood at the time of the trial, that the plaintiff recover against one defendant who had appeared, and that the suit be discontinued as to the other two defendants, of which one, in effect, had pleaded to the action, and the other was in default, is not in accordance with any precedent, ancient or modern. It may perhaps, we think, be regarded as an informal judgment against one of three defendants and a judgment in favor of the other two.

In Briggs v. Adams, 31 Ill. 486, the rule that in actions not sounding in tort, where no personal defense such as infancy or bankruptcy is interposed by one defendant, judgment must be rendered against all defendants who are served, or if that cannot be, then against none, was held to apply to actions commenced before justice of the peace. If this action be regarded as an action *ex contractu* and not *ex delicto,* the judg-

ment must be reversed, because the recovery was against one defendant only.

The car reached Chicago April 25, and the next morning stood on a team track in the Rock Island Company's freight yard in Chicago. Edgerton gave an order to the Rock Island Company to permit Scheele, his employe, to inspect the eggs in the car. About ten o'clock in the morning of April 26, Scheele presented this order at the freight office of the company and was given permission to enter said car to inspect the eggs. Thereupon Scheele, acting for Edgerton, and Ennis acting for one Roberts, broke the seals, went into the car and inspected the eggs, but did not count the cases. They were in the car from an hour and a half to two hours, and on leaving it told the foreman of the freight yard that they were through with their inspection. On their return to Edgerton's office, Ennis, for Roberts, bought the eggs and Edgerton gave him an order directing the Rock Island Company to deliver the eggs to Roberts. About one o'clock P. M. of the same day, Roberts handed said order to Cummings, the agent of the Wabash Railway Company, with his order to the Rock Island Company to deliver the car to the Wabash and an order to that company to transport the car to Albany, N. Y., and then deliver the eggs to a certain company.

It was stipulated on the trial that on the receipt of said order from Roberts the Rock Island Company applied to said car four seals, and then delivered the car to the Wabash, and that when said car reached Albany said seals were intact and unbroken and were broken by the consignee's agents. The cases were at once counted by the consignee and the car was found to contain only 327 cases.

The duty of the Rock Island Company was to carry the eggs to Chicago and there deliver them to Edgerton, or to his order. With their shipment from Chicago to Albany neither Edgerton nor the Rock Island

Company was in any way connected. It was, however, proper to offer evidence of such shipment, because the cases of eggs in the car were not counted from the time the car left Beatrice until it reached Albany. The evidence that it then had in it but 327 cases, with the stipulation that the car was sealed when it was delivered to the Wabash, and that the seals were unbroken when the car reached the consignee at Albany, proves that the Rock Island Company delivered, on Edgerton's order, only 327 of the 380 cases of eggs received by it, as a common carrier, at Beatrice. It is not stated when on April 25 the car arrived in Chicago, nor when the plaintiff was notified of the arrival. He knew that it had arrived as early as the morning of April 26, and some time during that day the car was delivered to the Wabash. We think that on the facts disclosed by the evidence, the liability of the Rock Island Company, as carrier, continued until the delivery of the car to the Wabash. But if it be conceded that at some time during April 26th its liability as carrier terminated, that thereafter it was liable only as warehouseman, and that the missing cases of eggs were taken from the car while it was liable as warehouseman, the plaintiff's right to recover would not be affected.

In an action against a warehouseman for not delivering goods, the burden of proving the delivery to the warehouseman and the failure to re-deliver by him is on the plaintiff, but those facts being proved, it devolves on the warehouseman to show that the goods were lost without his fault. Cumins v. Wood, 44 Ill. 416. In that case it was held that the presumption of negligence on the part of the warehouseman as to certain goods which were destroyed by fire was rebutted, but as to missing goods the loss of which was unexplained, the law presumed negligence and imposed on the warehouseman the burden of showing that he had exercised such care as was required by the nature of the bailment. In this case plaintiff in

error offered no evidence to explain or account for its failure to deliver to the Wabash, on the order of defendant in error, 57 of the 380 cases of eggs received by it at Beatrice.

The evidence offered by the plaintiff tends to show that the missing cases of eggs were taken from the car while it was in the Rock Island freight yard at Chicago, but whether before or after the sale of the eggs by Edgerton to Roberts does not appear. If they were taken after the sale still, in the opinion of the majority of the court, Edgerton could recover in an action in tort for their loss.

The Rock Island Company could not excuse its failure to deliver a part of the eggs on the order of Edgerton, the consignee, to deliver all to Roberts, on the ground that Roberts and not Edgerton was the owner of the eggs, unless it showed that the eggs had been taken from its possession by Roberts, or at least that it was so situated as to be made responsible to Roberts in case of a recovery by Edgerton, unless it urged the claim of Roberts in its own defense in this action. G. W. R. R. Co. v. McComas, 33 Ill. 186; 2 Redfield on Railroads, sec. 191, p. 214.

Roberts testified that he refused to pay Edgerton for more eggs than were in the car when it was delivered to the Wabash, and that he paid Edgerton for only 327 cases. He has not demanded that the Rock Island Company deliver to him the missing fifty-three cases, nor requested that company to set up in defense of this suit, that he, and not Edgerton, was the owner of the goods.

The Municipal Court Act provides that on the review of judgments in actions of the fourth class the reviewing court shall, "decide the case upon its merits as they may appear," from the statement or report signed by the judge.

In the opinion of the majority of the court, upon the merits as they appear in the statement in this

record, the plaintiff was entitled to recover the amount recovered, and the judgment will be affirmed.

*Affirmed.*

Dissenting opinion by Mr. Justice CHYTRAUS.

I am in perfect accord with my brethren of the court in the view that the judgment of the trial court cannot be sustained as a judgment in assumpsit, upon the ground that the Rock Island Railway Company undertook and promised with Edgerton, the defendant in error, to transport and deliver to him the goods in question, either in Chicago or in Albany.

In ascertaining the ground of liability, then, we must regard the suit as one by Edgerton, as owner, having either a general or a special title in the goods lost.   Whether he be a general or a special owner, the substantive law permits recovery, upon the theory that in an action on the case there is a public duty on the part of a common carrier or warehouseman for the benefit of the general or special owner.   That theory is the most ancient doctrine for recovery against a carrier or warehouseman for lost or injured goods.   Such action, however, is one sounding in damages not in contract.   Breach of contract being eliminated as the basis of the action only the owner, general or special, who has suffered injury, is entitled to recover damages.   I know of no other ground in the law, for recovery against a common carrier or warehouseman where goods have been lost or injured, than either breach of contract or breach of the public duty—action for the latter lies in case, by the owner. It seems to me subversive of the administration of justice according to fixed principles of substantive law if recovery be permitted without reference to either of these recognized grounds of recovery.

As stated, we all concur in that the judgment of the learned trial judge cannot be affirmed as based in assumpsit.   I believe, on the evidence I shall point out, that it is equally clear the judgment cannot

be sustained as being rendered in an action on the case. It may be that before the action was instituted the evidence was not carefully considered, but I cannot therefore accede to the rendition of a judgment founded in no theory in the substantive law. This is not merely a question of form of procedure. The tendency of modern judicial procedure is no longer to apply the technical and artificial rules formerly prevailing as to the mere form in which rights may be asserted. But the Municipal Court Act which provides that the reviewing court shall "decide the case upon its merits as they may appear" was not, I take it, designed to make it the law in this state that in an action on the case one being neither the owner nor one having any interest therein might recover for the loss of or injury to personal property. The Act is not intended to disturb or change the grounds upon which recovery has heretofore been had in actions at law.

This brings us to the question: Does the evidence in this record establish, or even tend to show, either a general or special ownership in Edgerton, of the eggs in question, at the time of the loss?

Mr. Edgerton testified that according to his books the car of eggs came to Chicago on the 25th of April. He must have been informed of that fact by the company. The car appears to have been taken to a teaming track of the railway company, where it was accessible by teams of parties who were receiving transported goods from the railway. He also says: "I handled the car on commission," which means, as I understand it, that he certainly had not the general ownership in the eggs.

About ten o'clock in the morning of the 26th of April Scheele, a salesman for Edgerton, and one Ennis, a buyer of eggs for one Roberts, broke the seals and went into the car of eggs then standing on the teaming track and there inspected them. They had an order of access to the car from Edgerton, which had been "O.K'd." by the cashier of the company,

and this order they had shown to the yardmaster before they were allowed to open the car. Their testimony is to the effect that they candled twenty and one-half cases of eggs but did not count how many cases there were in the car because, as one of them says, it was impossible to count a carload of eggs. To the contrary, on this question of possibility of counting the eggs while in the car, the plaintiff Edgerton's two witnesses the consignor, H. Fishback, and his assistant Blakeway, the pers⁀ns who loaded the car, say repeatedly that the egg cases were arranged in tiers and rows in the car and that they did count them after they were placed in the car.

After having been in the car for an hour and a half or two hours Scheele and Ennis left the car, presumably unsealed, and told the yard man, who was away from there a distance variously estimated at from a block or two to 250 yards, that they were through. Ennis then, after the inspection but the evidence fails to show when, bought the car of eggs for Roberts. Ennis testified that after he bought the eggs directions were given to the Rock Island Railway Company to deliver the car to the Wabash Railroad. He says: "We simply wrote the order, deliver car No. so-and-so to the Wabash Railroad." And about one o'clock of the same day they gave the order to John Cummings, a contracting agent for the Hoosac Tunnel Line, who was in nowise connected with the Rock Island Railway. At what time of the day the order from Roberts reached the Rock Island Company is not shown in the evidence. Edgerton tells us that he charged Roberts with the eggs and instructed the Rock Island to deliver the car to Roberts and, further, that after Roberts had bought he (Roberts) gave shipping directions to the Rock Island. It is stipulated between the parties that upon receiving shipping orders from Roberts the Rock Island Company, on April 26, 1904, sealed the car and delivered it to the Wabash Railroad Company in Chi-

cago, as per shipping orders from Roberts. It also appears that Roberts bought these eggs by the car load—"whatever the bill of lading said was in the car." When Edgerton sold to Roberts, *eo instanti* Edgerton's ownership and interest in the eggs, whatever it was, ceased. Thereafter he could not be damnified by their loss.

Does not the evidence introduced as fairly tend to show ownership in Roberts as in Edgerton at the time of loss? May a party introduce evidence which tends equally to show that he or someone else has sustained a loss or injury and then stop and yet, in tort, recover judgment. If so, then a judgment by a court of justice is but a speculation. We constantly instruct jurors that they may not speculate in arriving at a verdict; but, under the doctrine of this case, in this trial by the court without a jury, it seems to me to be held that it was permissible for the trial judge to speculate as to the ownership of the eggs. According to my views we may never, as a matter of substantive law, speculate upon a proposition as to which one of two defendants is liable, neither may we ever speculate whether negligence on the part of a defendant is existent or non-existent.

No longer since than in the case of Tuthill v. Belt Railway Company, in 145 Ill. App. 50, we unanimously approved of the following quotation as the law, viz.: "There is another rule of the law of evidence which is of the first importance, and is fully established in all of the courts, viz.: that where the evidence is equally consistent with either view—with the existence or non-existence of negligence—it is not competent for the judge to leave the matter to the jury. The party who affirms negligence has altogether failed to establish it. That is a rule which ought never to be lost sight of." Is there, then, any less reason why, in this case, we are prohibited from speculating upon the proposition in which one of the two given persons a cause of action exists? As far

as the evidence is concerned in this case it will not be disputed but what it is equally certain that Roberts owned the eggs when they were lost as that Edgerton owned them. This case is not far different from one where a bailee defendant has introduced evidence sufficient under a plea of *jus tertii*. Such showing by a plaintiff as defeats his own cause of action is, in my opinion, as effective as a plea of *jus tertii* by a defendant, fully sustained by evidence.

It appears very clear that the evidence in this case leaves the situation of the Rock Island Railway Company such that under the law it may be made responsible to Roberts, after a recovery by Edgerton. The plaintiff below left the record in that condition when he closed his evidence. He, therefore, failed to show liability on the theory of an action on the case.

In assumpsit the action lies by virtue of the privity of contract between the parties. In that action recovery may be had against a common carrier for breach of the contract even after the ownership of the lost property has been parted with. In such case the recovery is for the benefit of the transferee of the title. But here, unfortunately, the plaintiff plainly indicated that he did not bring his suit in assumpsit. His statement of his claim in its form, in the statement of the nature of the claim and in the joining of persons sued, indicates that his ground of recovery was not based in assumpsit. The trial judge, in the same breath, dismissed as to two defendants and rendered judgment against one. Such summary action, had the action been assumpsit, would have deprived the retained defendant of all opportunity of being heard upon the new cause of action in assumpsit that arose upon the elimination of two of the defendants.

Furthermore, from ten o'clock in the forenoon of the 26th of April for a period of an hour and a half or two hours Edgerton, by his salesman, had full and complete access to the eggs in question, if he did not, as a matter of law, have full and complete possession

thereof.   The Rock Island Railway Company's possession was but a bailment.   Edgerton, who was in the position of the bailor, broke bulk of the goods in bailment when his agent took the seals off the car in question.   Thereby the loss was made more possible, at least, if it was not solely thereby made possible.   A serious and important question exists in this case whether when Edgerton broke the seals of the car he did not relieve the bailee of liability or at least, to some extent, relax the strict rules of liability resting upon a common carrier or warehouseman.

It devolves no hardship upon parties or their counsel, in a suit against a common carrier for loss of or injury to goods, if it be required that when an action on the case be brought, the owner, having either a general or special ownership, bring the action.

If the eggs were taken after the sale to Roberts I fail to see how, in contemplation of the law, Edgerton was so damnified that he can recover from the defendant.   It appears to me that this judgment should be reversed and the cause remanded.